IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**RUSSELL GOODMAN, JR.;**
**RUSSELL GOODMAN, SR.;**
**and HELLEN SUE GOODMAN**                                                                       **PLAINTIFFS**

V.                              CASE NO. 3:22-CV-3017

**JIMMY DALE HARNESS,**
in his individual capacity,
and in his official capacity
as County Judge of Searcy County;
and JOHN DOES 1-10                                                                                **DEFENDANTS**

## OPINION AND ORDER

Now before the Court are Plaintiffs Russell Goodman, Jr., Russell Goodman, Sr., and Hellen Sue Goodman's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 4) and Motion for Emergency Hearing (Doc. 11). Plaintiffs filed their Complaint and Motion on April 18, 2022, in the Fort Smith Division. On April 19, the Honorable P.K. Holmes, III, issued an order (Doc. 10) transferring the case to the Harrison Division, which resulted in the reassignment of this case to the undersigned. On April 20, Plaintiffs filed a Motion for Emergency Hearing, and Plaintiffs' counsel sent an email to chambers urging that an *ex parte* hearing be set "this week, preferably in the next 48 hours." (Exh. 1).

According to the Complaint, in 2021, separate Plaintiff Russell Goodman, Jr. created a private road on his family's property by clearing brush and overgrowth and cutting grass. He named the road "Goodman Road" and installed a gate across it on November 6, 2021. Sometime in January 2022, Defendant Jimmy Dale Harness, the

1

County Judge of Searcy County, allegedly told Plaintiffs that the county considered Goodman Road to be private property and not a county road. Then, according to the Complaint, Mr. Goodman, Jr. expressed viewpoints and opinions critical of Mr. Harness on social media, and Mr. Harness retaliated by blocking Mr. Goodman, Jr. from commenting on and/or accessing the "Jim Harness" and "Searcy County Office of Emergency Management" Facebook pages.

Mr. Goodman, Jr. claims that on March 24, 2022, Mr. Harness told him that Searcy County had changed its position and now believed Goodman Road was a county road. Plaintiffs believe Mr. Harness then directed agents—the John Doe Defendants in the Complaint—to enter the Goodmans' property, remove the gate, and rip out the gate posts. Plaintiffs also believe that on April 15, Mr. Harness again directed certain unidentified "agents" to enter the Goodmans' property, where these individuals encountered Mr. Goodman, Jr. and threatened him with assault and battery. They also allegedly "endangered the life of" Mr. Goodman's two-year-old child, who was apparently nearby. (Doc. 2, p. 18).

Plaintiffs argue the "continuous and repeated trespasses" upon their real property by people under the direction of Mr. Harness "are causing irreparable harm to Plaintiffs' right to the quiet enjoyment of its [sic] property." *Id.* at p. 28. They ask the Court to enter a temporary restraining order ("TRO") or preliminary injunction to stop Defendant Harness, as well as the John Doe officers, agents, or affiliates under his direction, from further accessing or entering Plaintiffs' private property or from damaging any future gates that Plaintiffs might choose to erect across Goodman Road. Plaintiffs

acknowledge that a destroyed gate "of course, can be replaced," but they worry that if they put up another gate, it, too, will be destroyed. (Doc. 5, p. 3). They also worry that unknown actors might trespass on their land again and threaten or attack them. Finally, Mr. Goodman, Jr. claims he is being irreparably harmed by being "deprived from the opportunity and right to participate in . . . public forum discussions" on the two Facebook pages, as well as glean information posted periodically on those pages about county news. *Id.* at p. 4.

Plaintiffs advise in their Motion for Emergency Hearing that trespassers again entered their land on April 19 and stole camera equipment and cut down trees. Plaintiffs did not witness these acts. They speculate, however, that Mr. Harness had something to do with them.[1] *See* Doc. 11, p. 2.

Granting an *ex parte* temporary restraining order is only justified if it clearly appears from specific facts shown in the verified complaint that "immediate and irreparable injury, loss, or damage will result" unless relief is granted prior to the receipt of oppositional briefing and a hearing. Fed. R. Civ. P. 65(b). "*Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and

---

[1] Plaintiffs admit they "do not know who these people were, but in the event that it is the same people who attempted assault and battery on Russell Goodman, Jr. last week, this presents extreme risk to the life and safety of Plaintiffs, not to mention that cutting timber on private property is not the type of thing that can be easily compensated with money. Also, it will likely be impossible to compensate the Plaintiffs for this damage because they do not know who inflicted it, since the perpetrators stole the camera equipment that Plaintiffs installed for safety reasons." (Doc. 11, p. 3).

no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974) (internal citation omitted). "It is well-established under federal law that a temporary restraining order is an extraordinary remedy which should only be issued in exceptional circumstances." *Zidon v. Pickerell*, 338 F. Supp. 2d 1093, 1094–95 (D.N.D. 2004) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

If a moving party fails to establish grounds to issue an *ex parte* temporary restraining order ("TRO") under Rule 65(b), a court may still grant preliminary injunctive relief under Rule 65(a) "on notice to the adverse party." "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). In deciding whether to issue a preliminary injunction, the Court considers: (1) the likelihood that Plaintiff will prevail on the merits; (2) whether Plaintiff faces a threat of irreparable harm absent the injunction; (3) the balance between the harm Plaintiff faces and the injury that the injunction's issuance would inflict upon Defendants; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). Preliminary injunctive relief is "an extraordinary remedy" and "the party seeking injunctive relief bears the burden of proving all the *Dataphase* factors." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

In the case at bar, Plaintiffs' attorney served the Complaint and both pending Motions on Mr. Harness and his personal counsel, as well on as counsel for Searcy County. On April 19, counsel for Searcy County advised the Court in an email that he would be filing written responses to the Complaint and Motions by Monday, April 25.

4

Under the circumstances, Plaintiffs have failed to adequately justify why they will suffer immediate and irreparable injury if the Court fails to grant civil, equitable relief in the form of an *ex parte* TRO before holding a hearing. The Court is unpersuaded at this point that the harms alleged by Plaintiffs are immediate and irreparable. Further, the Court is unpersuaded that Plaintiffs have sufficiently alleged that Mr. Harness—and not the John Does who entered upon Plaintiffs' land—caused immediate and irreparable harm and should be enjoined.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 4) is **DENIED IN PART** as to the request for an *ex parte* temporary restraining order under Rule 65(b) and **DEFERRED** in part as to the request for a preliminary injunction under Rule 65(a).

**IT IS FURTHER ORDERED** that the Motion for Immediate Emergency Hearing (Doc. 11) is **DENIED** to the extent Plaintiffs request a hearing prior to the date oppositional briefing is completed. The Court intends to schedule an evidentiary hearing on the request for a preliminary injunction on the earliest date available on the Court's calendar.

**IT IS SO ORDERED** this 20th day of April 20, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE