**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**RUSSELL GOODMAN, JR.;**
**RUSSELL GOODMAN, SR;**
**and HELLEN SUE GOODMAN**                                                             **PLAINTIFFS**

**VS.**                                        **NO.  3:22-cv-03017-TLB**

**JIMMY DALE HARNESS, in his individual**
**capacity, and in his official capacity as County**
**Judge of Searcy County; and JOHN DOES 1-10**                          **DEFENDANT**

## BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

Come Now, Defendants, Searcy County Judge Jimmy Dale Harness, in his individual and official capacities, and for their Brief in Support of Motion to Dismiss First Amended Complaint herein state and allege:

## I.  INTRODUCTION

Plaintiffs bring suit against Searcy County Judge Jim Harness in his individual and official capacities pursuant to 42 U.S.C. § 1983 and Arkansas law, claiming various constitutional violations and state torts. Specifically, Plaintiff Goodman Jr. claims that his First Amendment rights (and analogous speech rights under the Arkansas Constitution) were violated because Judge Harness blocked/unfriended Goodman Jr. from two Facebook pages: one that is a personal page of Judge Harness and one that Judge Harness set up for the express purpose of conveying COVID-19 infection numbers. What Plaintiffs do not allege, is that they attempted to post anything on either page, *i.e.*, allegedly "speak," yet were unable to make such posts.

Plaintiffs also claim that Judge Harness unlawfully took their property in the form of a Road known as Sanders Field Road that abuts certain land owned by Plaintiffs Robert Goodman, Sr. and Helen Goodman (land owned by other property owners abut the road on the other side).

1

Sanders Field Road is also the only means of ingress and egress for the public - and federal government personnel - to access a portion of the Buffalo River National Park established by the federal government in the 1970s. The Plaintiffs have not named any other landowners or the federal government in this action, despite the fact they are necessary and indispensable parties. Plaintiffs also attempt to state trespass claims against the Defendants regarding the Road. Most notably, nowhere do Plaintiffs allege Judge Harness *ever* entered the property or conducted the acts they complain of in the First Amendment Complaint. This alone requires the First Amended Complaint to be summarily dismissed.[1]

Plaintiffs also claim the tort of abuse of process and a generic allegation that the Defendants have violated Section 1983 (even though Section 1983 contains no substantive rights). Plaintiffs also ask the Court to declare Judge Harness unfit, although there is no private right of action for Plaintiffs to seek such relief and the Court lacks subject matter jurisdiction to offer such an advisory opinion. Finally, Plaintiffs have filed numerous motions seeking a preliminary injunction and also seek such relief in the First Amended Complaint.

Defendants have responded to Plaintiffs' motions seeking temporary equitable relief and aver that Plaintiffs' motions should be denied. The arguments made in the Defendants' response are incorporated herein by reference as if repeated word for word pursuant to Fed. R. Civ. P. 10(c). Furthermore, Defendants have raised various affirmative defenses. Judge Harness issued an Order declaring the Road a public road on April 13, 2022, holding that the Road constitutes a public prescriptive easement, given the decades it has been used by the public and federal government.

---

[1] For instance, Plaintiffs vacillate as to *who* allegedly entered Sanders Field Road to correct the unlawful actions of Goodman, Jr. *See First Amended Complaint*, ¶ 118 as an example. Such inability to even allege any act by the Judge fails to state a claim and it is expressly denied Judge Harness ever entered the road to the extent alleged.

That was a judicial act, and is the act that is in dispute in this case. Thus, Judge Harness is entitled to absolute judicial immunity or quasi-judicial immunity for any claim against him regarding Sanders Field Road. Furthermore, Judge Harness is entitled to statutory immunity and qualified immunity for all of Plaintiffs' claims. Searcy County cannot be sued on the basis of respondeat superior and enjoys immunity from suit pursuant to statute as well.

Rather than respond to Defendants' meritorious motion to dismiss, Plaintiffs have amended their Complaint. However, the amendment is not materially different than the original complaint and does not overcome Defendants' entitlement to immunity and dismissal. In their amendment, the Plaintiffs claim that Judge Harness failed to give notice and an opportunity to be heard regarding the Order declaring Sanders Field Road a public road. The same is denied, and the attachments to the Defendants' Response to Plaintiffs' motion for equitable relief demonstrate they were given notice that the road was public and any impediments to passage had to be removed. Yet, instead of removing said impediments, Russell Goodman, Jr., unlawfully downed trees and placed sheet rock screws in the Road. The Order of which Plaintiffs complain in the amendment was validly created as a public road by the Judge after notice to the Goodmans, *See Frazier-Hampton v. Hesterly*, 89 Ark. App. 211, 201 S.W.3d 447 (2005). In any event, Judge Harness enjoys judicial or quasi-judicial immunity for the Order as argued herein.

Finally, Plaintiffs have failed to state a claim upon which relief can be granted and the First Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12.

## II.  STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."  In its decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme

Court revisited the standards for determining whether factual allegations are sufficient to survive

a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid.; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[merit] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) (" [T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, e.g., *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted); see *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949,

173 L. Ed. 2d 868 (2009) (instructing that "short and plain statement" requirement "demands more

than an unadorned, the-defendant-unlawfully-harmed me accusation.").  Thus, the Eighth Circuit

Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a

complaint must contain factual allegations sufficient  'to raise a right to relief above the speculative

level. . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S.

at 555).   To put it another way, "the complaint must allege 'only enough facts to state a claim to

relief that is plausible on its face.'"  *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387

4

(8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 570); accord *Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic*, 550 U.S. at 557).

Additionally, the Court can consider matters of public record that do not contradict the Complaint in assessing the instant motion. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). In that regard, the Defendants have submitted two letters, an Ordinance of Searcy County, and an Order of Judge Harness in response to the Plaintiffs' motions for preliminary injunction. *See* Doc. No. 19. Those documents are incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c). For the reasons stated herein the Complaint should be dismissed.

### III.  DISCUSSION

#### A.    The First Amended Complaint should be dismissed for failure to name necessary and indispensable parties.

Federal Rule of Civil Procedure 19(a)(1) requires the joinder of a person who is subject to service of process and whose joinder will not defeat subject-matter jurisdiction if: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's presence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

In this case, only two of the Plaintiffs own any relevant property (Robert Goodman, Jr. owns no relevant property and, thus, lacks standing in any of the real property claims) and they own property only on one side of Sanders Field Road. The owners of the real property on the other

5

side of Sanders Field Road are indispensable parties. The Plaintiffs' Complaint necessarily requires the Court and, if indicated a jury, to make determinations about whether Sanders Field Road is a public or private road.  That determination regarding the status of the road will almost certainly affect the rights of the owner of the land on the other side of Sanders Field Road (if it did not, the same would be true for the Plaintiffs' land and the case should be dismissed). Proceeding with this action in the absence of the other adjoining landowners certainly "may impair or impede" the interest of those landowners in their property. Furthermore, even if the case is decided in the County's favor and a public easement is recognized (and that Judge Harness' Order declaring the road as a public easement is valid), the County would still face a substantial risk that other landowners might file a separate action on related ground in the future. For these reasons, the other landowners are necessary and indispensable parties who should have been joined in this action. It is unclear whether joinder is feasible on the other landowner, but if it is not, then the Complaint should be dismissed.

In addition to the other abutting landowners, the federal government has used the Road as a means of ingress and egress to the National Park since the 1970s. And, that land is, of course, preserved for the benefit of the public in general, who also use the Road to access the National Park. Thus, if the Court were to determine that the Plaintiffs have a superior right to the Road and that the Road is not public, or that the public does not have an easement over the road (by prescription and/or necessity), such a decision would injure the rights of the federal government. Yet, without its joinder, the government cannot be heard or make its position clear to the Court regarding the legal status of the Road. Consequently, the federal government is a necessary and indispensable party. The failure to join either the other landowners or the federal government will

6

deprive all parties before the court of complete relief. If either cannot be joined, the Complaint should be dismissed.

      **B.**      **Plaintiffs' state tort claims should be dismissed.**

            1.     *Plaintiffs have failed to state a claim upon which relief can be granted as to their trespass claims.*

      The Plaintiffs have failed to allege any facts that would establish that the named Defendants had any personal involvement in any of the alleged state torts alleged, save for their abuse of process claim, which also fails. There is certainly no allegation that Judge Harness himself visited Sanders Field Road or any abutting property and, thus, no factual allegations that would establish that he trespassed on the elder Plaintiffs' land (there are no houses or other structures on the land abutting Sanders Field Road and no one lives on the properties). And Searcy County (i.e., Judge Harness, as sued in his official capacity) is not a natural person and, thus, cannot trespass itself (or commit any alleged state tort, for that matter). Ark. Code Ann. § 5-39-203, the statue by which Plaintiffs purport to sue Judge Harness for trespass applies only to "a person" that allegedly commits trespass and no Arkansas case has ever found any municipal entity to be a person for purpose of that statute; likewise, the statute requires proof that the trespasser "enter[ed]" and/or "remain[ed]" on the subject property, which the Plaintiffs have not alleged and cannot allege.[1] Again, there is no allegation Judge Harness trespassed on Plaintiffs' property personally. This argument is akin to the argument that a person cannot be held liable under Section 1983 absent an

---

[1] Whether an Arkansas County could possibly "enter" or "remain" on real property within itself (or, conversely, is always so "entering" and "remaining") appears to be an infinitely circular question.  What is far more clear is that no Arkansas prosecutor or court has ever seen fit to charge a municipal entity with the offense of trespassing, much less convict, and no such entity appears to have ever been held liable for the offense in a civil case.

allegation of personal involvement in an alleged constitutional violation. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). And the County is not a "person" as contemplated by the statute. Thus, Plaintiffs have failed to state a claim upon which relief can be granted as to any named Defendant in this case regarding their trespass claims, either statutory or via the common law.

Even if the Plaintiff had sued a person who had actually been to Sanders Field Road or the surrounding properties, they could not establish that the person intentionally trespassed on the Plaintiffs' property because the road is a public road and the public has a prescriptive easement over the road, as more fully discussed in Defendants' response to Plaintiffs' motions for temporary equitable relief. *Williams v. Pate*, 2015 Ark. App. 327, at 5, 463 S.W.3d 734, 737 (finding Ark. Code Ann. § 21-9-301 provided qualified immunity against trespass claim); *see also Frazier-Hampton v. Hesterly*, 89 Ark. App. 211, 201 S.W.3d 447 (2005). Those arguments are incorporated by reference herein as if repeated word for word. Likewise, the federal government has both a prescriptive easement and an easement by necessity over the road, given it is the only method of ingress and egress to that area of the National Park. Plaintiffs have likewise failed to allege facts sufficient to state a claim regarding their abuse of process claim.

> 2.    *The Defendants are entitled to dismissal of Plaintiffs' abuse of process claim.*

In order to prove the tort of abuse of process, the Plaintiffs must establish the following elements: (1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding. *South Ark. Petroleum Co. v. Schiesser*, 343 Ark. 492, 502, 36 S.W.3d

317, 323 (2001). The test of abuse of process is whether a judicial process is used to extort or coerce. *Routh Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998). The key to the tort is the improper use of process after its issuance in order to accomplish a purpose for which the process was not designed. *Id.; see also Harmon v. Carco Carriage Corp.*, 320 Ark. 322, 895 S.W.2d 938 (1995); *Cordes v. Outdoor Living Center, Inc*, 301 Ark. 26, 33, 781 S.W.2d 31, 34 (1989). Thus, it is the purpose for which the process is used, once issued, that is important in reaching a conclusion. *Id.*

In their First Amended Complaint, the Plaintiffs assert that Judge Harness purportedly initiated a legal proceeding to retaliate against—presumably—Goodman Jr. However, if the Court looks closely, Plaintiffs fail to state *any* facts that support any alleged abuse of process. Their allegations are conclusory and fail *Iqbal*'s plausibility test. Furthermore, Goodman Jr. has no ownership interest in Sanders Field Road or any property surrounding or abutting it by his own admission. Thus, even assuming *arguendo* that Plaintiff Goodman Jr. claims an abuse of process via the Judge's Order, he has no standing to make that claim. Furthermore, Mrs. Goodman remains a Facebook friend of Judge Harness and upon information and belief, Mr. Goodman Sr. has no Facebook account. So, the actual owners of the property cannot claim they were retaliated against, which in any event is expressly denied. Plaintiffs acknowledge that a member of the public—not a County employee—advised the County that Goodman Jr. had blocked the public's easement by placing a locked gate across Sanders Field Road. Goodman Jr. had no right to do that, and the Judge's Order is valid, particularly considering the decades the public and federal government have used the Road, entailing the public has at least a prescriptive easement over the property (the other abutting landowners, including the United States, also have an easement by necessity, as Sanders Field Road is the only means of ingress and egress to the land abutting Sanders Field and

9

to a portion of the Buffalo River National Park). The Plaintiffs' abuse-of-process allegations simply fail to state a claim and should be dismissed.

3.    *Plaintiffs' assault and battery claims should be dismissed*.

Nowhere does the Plaintiff Goodman Jr. allege that the named Defendants - Searcy County and County Judge Jim Harness - offensively touched or threatened to touch any of the Plaintiffs; in fact, there is no allegation in the First Amended Complaint that any of the Plaintiffs every personally encountered Judge Harness (a County cannot touch, or plausibly threaten to touch, anyone).  In short, there is no allegation of physical touching in the First Amended Complaint and no allegation of the imminent fear of such touching by any named Defendant, which would certainly require the dismissal of these claims.

4.    *Statutory immunity bars all of Plaintiffs' state law claims*.

All of the state law claims made against Defendants herein are barred by statutory tort immunity. The applicable statute is entitled "Tort liability - Immunity Declared," and provides as follows:

> (a) It is declared to be the public policy of the State of Arkansas that all counties … and all other political subdivisions of the state  … shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

> (b) No tort action shall lie against such political subdivision because of the acts of their agents and employees.

Ark. Code Ann.§ 21-9-301. The immunity granted by the above-quoted statute to a county extends to the county's officials and employees.  *Matthews v. Martin*, 280 Ark. 245, 658 S.W.2d 374 (1983).

Pursuant to Ark. Code Ann.§ 21-9-301, the Plaintiff's Complaint should be dismissed because, under Ark. Code Ann. § 21-9-301, Judge Harness and Searcy County are "immune from

liability and from suit for damages." This plain, broad grant of immunity compels the dismissal of the Plaintiff's claims. "Municipal immunity for governmental functions has been the rule in Arkansas for over a hundred years." *Matthews v. Martin*, 280 Ark. 345, 346, 658 S.W.2d 374, 375 (1983). The Arkansas Supreme Court has held that Ark. Code Ann. § 21-9-301 only immunizes municipalities and their officials/employees from negligence actions, *see Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992), however, no case has ever provided any explanation for how the court arrived at this misreading of the plain language of the immunity statute. In *Deitsch*, the court cited to *Waire v. Joseph*, 308 Ark. 528, 825 S.W.2d 760 (1992), and in *Waire,* the court cited to *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989), but neither *Waire* nor *Battle* explain the misreading or its genesis. In *Deitsch*, the Supreme Court simply stated that Ark. Code Ann. § 21-9-301 was never interpreted to include intentional torts committed by public officials. 241 Ark at 245, 766 S.W.2d at 433. However, this is not accurate, prior to *Battle*, the courts *did*, in fact, apply the statute to intentional torts. In *Autry v. Lawrence*, 286 Ark. at 503, the Supreme Court applied the immunity provided by the statute to an action against a police officer for the tort of malicious prosecution. In *Harrington v. City of Greenbrier*, the court applied this immunity to the tort of "deliberate fraud." 262 Ark. 773, 775, 561 S.W.2d 302, 304 (1978).

Furthermore, the Arkansas Supreme Court recently applied the statute to the intentional tort of false arrest. *Trammell v. Wright*, 2016 Ark. 147, 489 S.W.3d 636. As the Court noted, Undersigned made the same argument there as Defendants make here—that the statute provides immunity for even intentional torts. *Id*. However, it was not necessary for the Court to reach that argument because the facts—as opposed to the label placed on the claim—failed to show intentional wrongdoing. Nevertheless, the issue is ripe for consideration, even if that requires the Court here to certify the question to the Arkansas Supreme Court.

11

Additionally, federal courts applying Arkansas law have also granted immunity under the statute for so-called intentional torts as well. *See Dillard v. O'Kelley*, Case No. 5:17-cv-5089 (W.D. Ark. Feb. 9, 2022)*; Mosier v. Robinson*, 722 F. Supp. 555, 556 (W.D. Ark. 1989) (granting summary judgment to the county when a sheriff, while under the influence of alcohol, was alleged to have beaten a person in custody); *Dumond v. Conlee*, 710 F. Supp. 1270, 1273 (E.D. Ark. 1988) (finding the county to be immune under the above statute when a sheriff was alleged to have seized a castration victim's testicles, placed them in a jar, showed them to visitors in the sheriff's office, and ultimately flushed them down the toilet).

Even after *Battle*, courts have applied the statute to intentional torts. In *Loren D. Buttolph Trust v. Jarnagan*, the Supreme Court held that a mayor/waterworks manager was immune from liability under the statute for refusing to provide water service to a non-resident customer. 302 Ark. 393, 394 95, 789 S.W.2d 466, 467 (1990). In *City of Alexander v. Doss*, the Arkansas Court of Appeals stated that actions for trespass would be immunized under § 21-9-301. Ark. App. at 236. Additionally, the Arkansas Court of Appeals has granted immunity for intentional torts under Ark. Code Ann. § 21-9-301 in at least two cases recently.  *See Monk. v. Rogers*, 2021 Ark.App. 148 & *Elliott v. Morgan*, 2020 Ark. App. 297.  The case law indicates the courts' willingness to apply the statute to intentional torts, and is void of justification for the current application of the law. Going forward, the statute should be applied consistently to all tort claims seeking money damages, based on the language and the policy reasons of the statute.

The language of Ark. Code Ann. § 21-9-301 is clear and unambiguous and, under the rules of statutory construction, the statute should be applied to all tort claims for damages.  "The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language." *Quanex Ark. Okla. Gas*

*Corp. v. Macsteel Div. of Quanex*, 370 Ark. 481, 485, 262 S.W.3d 147, 150 (2007) (citing *Weiss v. McFadden*, 353 Ark. 868, 120 S.W.3d 545 (2003). "Where the language of a statute is clear and unambiguous and susceptible of a sensible construction, resort to extrinsic and collateral aids in construing it is not permitted. *Britt v. State*, 261 Ark. 488, 495, 549 S.W.2d 84, 87 (1977) (citing *Cross v. Graham*, 224 Ark. 277, 272 S.W.2d 682 (1954)); *Ark. State Licensing Board for General Contractors v. Lane*, 214 Ark. 312, 215 S.W.2d 707 (1948).

"A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning." *City of Fort Smith v. Carter*, 364 Ark. 100, 108, 216 S.W.3d 594, 599 (2005) (citing *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997).  Statutes are construed "so that no word is left void, superfluous or insignificant," and every word is given meaning and effect if possible. *Weiss v. Maples*, 369 Ark. 282, 286, 253 S.W.3d 907, 911 (2007); *Jeske*, 365 Ark. at 279, 229 S.W.3d at 23; *See also Fitzhugh, supra*. The language of Ark. Code. Ann. § 21-9-301 is clear, plain, and unambiguous. *See Hardin v. City of Devalls Bluff*, 256 Ark. 480, 483, 508 S.W.2d 559, 562 (1974) (quoting *Sullivan, Adm'r. v. Pulaski Cnty.*, 247 Ark. 259, 445 S.W.2d 94 (1969) (stating that a previous version of the act was "a statement of public policy that is plain and unambiguous and leaves no room for doubt.").

The statute plainly states that municipalities "shall be immune from liability and from suit for damages." Ark. Code Ann. § 21-9-301 (a). It is the court's duty "to declare what the law is, and not what it ought to be." *Hardin*, 256 Ark. at 485.  No language in the statute indicates that the immunity applies only to negligent torts.  Conversely, the counterpart tort immunity statute that applies to state employees, Ark. Code Ann. § 19-10-305, contains an exception to immunity for malicious acts or omissions.  No such exception language is in the municipal tort immunity

13

statute.  Had the legislature intended to include such limiting language, it could have—and presumably would have—done so.

The intent of the Legislature in enacting Ark. Code Ann. § 21-9-301 was to protect municipalities from "high judgments," whether from negligent or intentional torts. "The basic rule of statutory construction is to give effect to the intent of the legislature." *Weiss v. Maples*, 369 Ark. at 286; *State ex rel. Ark. Dep't of Parks and Tourism v. Jeske*, 365 at 285. "[W]e ascertain the legislative intent from the language used in the statute itself." *Britt v. State*, 261 at 495.  Crucially, a court should not add words to a statute that are not present in assessing the statute. *Our Community, Our Dollars v. Bullock*, 2014 Ark. 457, at 18, 452 S.W.3d 552, 563.

In a concurring opinion in *Southwest Ark. Communications, Inc. v. Arrington*, the Honorable Justice Glaze lamented that the lack of a system of record keeping for proceedings in the General Assembly makes it difficult to construe the intent of the legislators. 296 Ark. 141, 149, 753 S.W.2d 267, 271 (1988) (Glaze J., concurring). The paucity of information regarding legislative history in Arkansas makes it necessary to rely on the Act itself and its title to ascertain the intent of the legislature. *Id.* at 148, 270; *See also Consumers Utilities Rate Advocacy Division v. Ark. Public Svc. Comm'n*, 99 Ark. App. 228, 235, 258 S.W.3d 758, 765 (2007) ("The title of an act, while not part of the law, may be referred to in order to help ascertain the intent of the General Assembly").

Here, Ark Code. Ann. § 21-9-301 was initially enacted as Act 165 in 1969. The title of the Act reads as follows:

> AN ACT to Declare It to Be the Public Policy of the State of Arkansas That the State and Its Political Subdivision Shall Not Be Liable for Tort Under the Laws of the State of Arkansas and to Provide That No Action Shall Be Maintained Therefor; to Require All Political Subdivisions to Carry Liability Insurance On Their Motor Vehicles; to Declare An Emergency; and for Other Purposes.

14

Section 4 of the Act reads:

> It is hereby found and determined by the General Assembly that because of the decision of the Arkansas Supreme Court in *Parish v. Pitts*, 244 Ark. 1239, municipalities and all units of local government are in imminent danger of bankruptcy because of tort lawsuits and vital public services are in danger of being discontinued. Therefore, an emergency is hereby declared to exist and this Act being immediately necessary to protect the public peace, health and safety, shall take effect immediately on its passage and approval.

In *Thompson v. Sanford*, the Supreme Court recognized that the valid legislative purpose of Ark. Code. Ann. § 21-9-301 involved the need for immunity to protect governmental entities "from exposure to high judgments which would destroy them." 281 Ark. 365, 368, 663 S.W.2d 932, 934 (1984); *see also White v. City of Newport*, 326 Ark. 667, 672, 933 S.W.2d 800, 803 (1996). The language of the Act clearly and unambiguously shows that the intent of the legislature was to protect the municipalities from high judgments. There is no indication that the concern expressed by the legislature in Section 4 of the Act was limited only to negligent torts. Indeed, actions based on so-called intentional torts have just as much potential to result in high judgments as do actions based on negligence. There is nothing to indicate that the legislature intended to protect governmental entities from only judgments resulting from negligence claims and not claims based on intentional torts.

Based on the foregoing, the Defendants enjoy statutory immunity from all of Plaintiffs' state tort claims, whether couched as negligent torts or intentional torts. Thus, Plaintiffs' trespass claims, assault and battery claims (to the extent made), and abuse of process claims should be summarily dismissed and the Court should find Defendants immune from such claims pursuant to Arkansas statute.

**C.      Plaintiffs' federal claims should be dismissed**.

1.      *Defendant Harness in his individual capacity is entitled to absolute judicial immunity for Plaintiffs' land-use claims.*

The Plaintiffs' complaints about Judge Harness's Order declaring Sanders Field Road a public road are barred by absolute judicial or quasi-judicial immunity. In *Blevins v. Hudson*, the Arkansas Supreme Court granted a county judge judicial immunity for an order issued by the judge. 2016 Ark. 150, at 4-6, 489 S.W.3d 165, at 168-69. The Court said: "… it is clear that there is a need for county judges to be free from harassment and intimidation and insulated from political influence when they enter orders in a judicial capacity." *Id*. (citing *Cleavinger v. Saxner*, 474 U.S. 193 (1985)). Here, based on *Blevins*, Judge Harness is entitled to absolute judicial or quasi-judicial immunity for the entry of the Order declaring Sanders Field Road a public road and any act taken in furtherance of ensuring the Order was honored (which based on the record submitted under Fed. R. Civ. P. 65, it is clear the Order was not honored by Goodman Jr.).

Plaintiffs' new allegations in Counts 10 and 12 do not deprive Judge Harness of immunity, because the acts of which they complain were taken in his role as a judicial officer under state law. Indeed, *Plaintiffs admit this* in paragraphs 137, 177, and 179 of the First Amended Complaint. Furthermore, Plaintiffs' new conspiracy claim fails because, again, Judge Harness enjoys immunity and Plaintiffs fail to allege any other person who allegedly conspired with Judge Harness, and the same is expressly denied.

Furthermore, Arkansas District Court Rule 9 requires all appeals of County Court Orders to be made to an Arkansas Circuit Court, which leaves this Court without jurisdiction. Plaintiffs were aware of the Order in ample time to appeal it and, per Rule 9, have forfeited any claim regarding the Order depriving this Court of jurisdiction of any such claim.

2.      *Judge Harness is entitled to qualified immunity for all of Plaintiffs' purported constitutional claims.*

Qualified immunity shields government officials from liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). As the United States Supreme Court made clear, qualified immunity finds its genesis in the common law. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-269 (1993).

"The immunity is an immunity from suit, not merely from liability." *Id.* (emphasis in original). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). To determine whether Defendants are entitled to qualified immunity, the Court considers two questions: (1) whether the facts shown, construed in the light most favorable to Walton, establishes a violation of a constitutional or statutory right; and (2) whether the right violated was so clearly established at the time of the alleged misconduct that a reasonable official would have known that the alleged actions were unlawful. *Pearson*, 555 U.S. at 232. Qualified immunity operates to ensure that before they are subjected to suit, government officials are on notice their conduct is unlawful. *Id.* at 244 (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). Stated another way, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Williams v. Jackson*, 600 F.3d 1007, 1013 (8th Cir. 2010). The Court may consider these two questions in any order, but may not deny qualified immunity without answering both questions in Plaintiffs' favor. *Pearson*, 555 U.S. at 236; *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014).

Even if the Plaintiffs could survive dismissal on the first prong of qualified immunity (they cannot), they could not maintain their claims under the "clearly established" prong of the defense.

"The plaintiffs have the burden of showing that the law was clearly established." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). In *Estate of Walker*, the Eighth Circuit said: "[t]o be clearly established, preexisting law must make the unlawfulness of the officials' conduct apparent so that they have 'fair and clear warning' they are violating the constitution; qualified immunity therefore protects 'all but the plainly incompetent or those who knowingly violate the law.' Because qualified immunity protects officials who make bad guesses in gray areas, it gives them breathing room to make reasonable but mistaken judgments." *Id*. (quoting *White v. Pauly*, 137 S.Ct. 548, 551-52 (2017)). The law at issue—here the law regarding the First Amendment and Fifth Amendment and related state constitutional claims— should not be defined at a "high level of generality." *Ashcroft*¸ 536 U.S. at 742. Plaintiffs cannot allege the violation of extremely abstract rights; the clearly established law must be "'particularized' to the facts of the case." *White*, 137 S.Ct. at 552 (quoting *Anderson v. Creighton*¸ 483 U.S. 635, 640 (1987)). "In the light of preexisting law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. In *White*, the United States Supreme Court reversed the Circuit Court's denial of qualified immunity where the Circuit Court ". . . failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment." *White*, 137 S.Ct. at 552. Thus, qualified immunity was appropriate.

a.    *Plaintiffs' speech-related claims*

Furthermore, while there is case law advising courts that the law is clearly established only where binding precedent has clearly established the law or the law has been clearly established by a robust consensus of persuasive authority, respectfully that should not be the law the Court looks to in assessing the second prong of the defense. The United States Supreme Court in discussing qualified immunity for government officials has recently said: "[w]e have not yet decided what

precedents—other than our own—qualify as controlling authority for purposes of qualified immunity. We express no view on that question here. Relatedly, our citation to and discussion of various lower court precedents should not be considered as agreeing or disagreement with them, or endorsing a particularly reading of them." *Dist. of Columbia v. Wesby*, 138 S.Ct. 577, fn 8 (2018). The Defendants submit that where a United States Supreme Court case has not clearly established the particular law at issue at the appropriate level of specificity, then qualified immunity applies regardless of whether lower courts have ruled on the issues before the Court based on this statement from *Wesby*.

As to the merits of Plaintiffs' First Amendment claims (the first prong of qualified immunity), Defendants submit that Facebook, privately controlled, is not a public forum or even a limited public forum. It is true there are district court cases that have found otherwise, but, respectfully, those decisions were incorrectly decided. As Judge Marshall of the Eastern District of Arkansas emphasized in a recent opinion: "The Supreme Court hasn't yet spoken on this First Amendment issue." *Hyman v. Kirksey*, No. 3:18-cv-230-DPM, 2019 WL 2323864, at 2 (E.D. Ark. May 30, 2019). There, the Court granted qualified immunity to the Chief of Police for deleting a member of the public's Facebook posts on a Facebook page maintained by the City's police department. *Id.* While the Second Circuit Court of Appeals found Twitter was a public forum in *Knight* in the circumstances of that case, those circumstances are not present here and *Knight* was vacated by the United States Supreme Court in *Biden v. Knight First Amendment Inst. at Columbia Univ.*, 141 S.Ct. 1220 (2021). In concurring in the opinion, Justice Thomas said:

> Applying old doctrines to new digital platforms is rarely straightforward.
>
>           ...
>
> But it seems rather odd to say that something is a government forum when a private
> company has unrestricted authority to do away with it.

...

> Yet, the Second Circuit's conclusion that Mr. Trump's Twitter account was a public forum is in tension with, among other things, our frequent description of public forums as "government-controlled spaces."

*Id.*, 141 S.Ct. at 1221-22 (Thomas, J., concurring). The Court *has* previously held that an outright ban by certain groups by state statute on the use of internet sites such as Facebook can violate the First Amendment, but that is not what is alleged here. *See Packingham v. North Carolina*, 137 S.Ct. 1730 (2017).

Here, Judge Harness created a personal Facebook page and, after being harassed by Goodman Jr. via text messages and phone calls, unfriended/blocked Goodman Jr. from his personal page and from the Emergency Management page Judge Harness set up merely to report information about COVID-19 infection numbers. Goodman Jr. has not been prohibited by Judge Harness or Searcy County from expressing his views via other pages or other social media, nor does he allege such. Furthermore, it does not appear in the Complaint that Plaintiff Goodman Jr. alleges any particular post he desired to make, whether it would allegedly receive First Amendment protection, but was unable to post because of being defriended/blocked.

Moreover, it is legally peculiar that a court might find that a government official—who retains his own constitutional rights—must be "friends" with anyone on a site set up for personal messages through a wholly private company (or that anyone has a First Amendment right to be another's "friend," virtually or otherwise). The elder Plaintiffs have not been unfriended/blocked from anything by Judge Harness; in fact, Helen Goodman is one of Jim Harness' Facebook friends. Moreover, Facebook is a private company—that enjoys immunity itself apparently—and has control over all facets of who may or may not post or use its platform. It simply makes no sense

that a private company can constitutionalize a private product or service, and Defendants submit it cannot.

Even assuming *arguendo* a private company could constitutionalize a private platform such as Facebook, the United States Supreme Court has yet to rule on a case like the one before this Court involving defriending/blocking someone from what is clearly a personal page by a person who simply happens to be a government official. *See Biden*, *supra*. A fitting example is *Swanson v. Griffin*, No. 21-2034, 2022 WL 570079 (10th Cir. Feb. 25, 2022) (unreported). There, the Tenth Circuit reversed the District Court in a case not unlike this case (except, Defendant deny Judge Harness created a public forum with respect to the two Facebook pages at issue here and, thus, the Plaintiffs' speech claims should fail on the merits). In granting qualified immunity just two months ago, the Tenth Circuit said: "[Plaintiff] has not identified a Supreme Court or Tenth Circuit case addressing a set of facts sufficiently similar to those surrounding Mr. Griffin's Facebook profile." *Id*. at 3. Further, the Court said: " … [Plaintiff], critically, has not identified law clearly establishing when an individual government official's social media profile becomes a public forum. *The Supreme Court has not addressed this question*." *Id*. (emphasis added). Under the facts, even as alleged, the law is not clearly established and Judge Harness is entitled to qualified immunity for Plaintiffs' speech, petitioning, and remonstration claims under both the United States and Arkansas Constitutions. *See* Doc. No. 20 (arguing that all of Plaintiffs' speech-related claims should be analyzed the same). Thus, the Complaint should be dismissed.

b.      *Plaintiffs' land-use claims*

Under the first prong of qualified immunity, *i.e.*, the merits, the Defendants are entitled to qualified immunity and dismissal. Plaintiffs have not alleged that their property has been devalued by the prescriptive easement, easement by necessity, or Judge Harness's Order. Thus, they have

not alleged an essential element of a "takings" claim, under either the United States Constitution, the Arkansas inverse condemnation law, or the Arkansas Constitution.[2] Plaintiffs do not allege diminished value of any property and do not allege any information about the fair market value of any property. Moreover, the Plaintiffs have not suffered a "deprivation of property" in the removal of an illegal gate across a public road. The gate was not damaged and retained its alleged value. In the very least, even assuming *arguendo* a property deprivation, any alleged deprivation is not compensable because there is no allegation that the fair market value of the Plaintiffs' land has been reduced (again, Goodman, Jr., does not own the land and has no standing) and a "taking" only occurs where just compensation is not paid. *See* Doc. No. 2, pp. 23-25. Indeed, the only measure of damages of just compensation in an alleged taking by the government is the difference in fair market value immediately before and immediately after the alleged taking. *Prop. Owners Imp. Dist. No. 247 of Pulaski Co. v. Williford*, 40 Ark. App. 172, 178, 843 S.W.2d 862, 866 (1992); *see also Nemmers v. City of Dubuque*, 764 F.2d 502, 504 (8th Cir. 1985). There is no allegation and no proof of the same; indeed, the land at issue has not diminished in value simply because the County Judge, after giving ample notice, ordered the existing prescriptive easement in favor of the public be maintained. Plaintiffs' land-use claims should be dismissed on the merits and, thus, the first prong of qualified immunity as well.

---

[2] Additionally, Plaintiffs' attempt to allege a claim under the Arkansas Civil Rights Act for an alleged taking should fail, as the State inverse condemnation statute provides the exclusive means to allege an inverse condemnation under Arkansas law. *DeBoer v. Entergy Arkansas, Inc.*, 82 Ark. App. 400, 404, 109 S.W.3d 142, 145 (2003).

Alternatively, given the arguments on the merits and the law cited above, and because Plaintiff has not shown that Defendants violated any clearly established law, Judge Harness is entitled to qualified immunity under the second prong of the defense.

**D.    The Complaint against Searcy County should be dismissed**.

Public officers can be sued in their individual or official capacities or both; suits against public officers in their official capacities are a suit against that official's agency (thus, the official capacity claim against Judge Harness is a suit against Searcy County itself). *See, e.g., Ark. Dep't of Human Servs. v. Fort Smith Sch. Dist.*, 2015 Ark. 81, 6, 455 S.W.3d 294, 299 (2015). Counties in Arkansas, including Searcy County, are political subdivisions of the State. *See, e.g., Davis v. Fulton County*, 884 F. Supp. 1245 (E.D. Ark. 1995) (citing Ark. Code Ann. § 12-14-102); *Muse v. Prescott Sch. Dist.*, 233 Ark. 789, 791, 349 S.W.2d 329, 330 (1961) (citing *Granger and Wife v. Pulaski County*, 26 Ark. 37 (1870)). Plaintiffs are attempting to hold Searcy County liable under respondeat superior (claiming Judge Harness's alleged actions are "attributable to the State," or "attributable to Searcy County, Arkansas).

Ark. Code Ann. 21-9-301(b) states clearly that "[n]o tort action shall lie against any such political subdivision because of the acts of its agents and employees." Vicarious liability is simply not actionable against Searcy County. Thus, all of Plaintiffs' state claims are barred by statutory immunity, as more fully discussed above. Plaintiffs' federal claims should be dismissed because Plaintiffs are attempting to hold Searcy County vicariously liable under the respondeat superior doctrine, which is impermissible under Section 1983. *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 851 (8th Cir. 2006). Thus, all claims against Searcy County should be dismissed.

Furthermore, the County Court has exclusive jurisdiction over Plaintiffs' land-use claims per the Arkansas Constitution. Ark. Const., art. 7, § 28. And a party can appeal a county court

order to circuit court. Ark. Code Ann. § 14-14-1106. Thus, there can be no allegation that the County Judge can create a *final* "policy or custom" such that Searcy County can be implicated in any way in this case. *Granda v. City of St. Louis*, 472 F.3d 565, 569 (8th Cir. 2007) (finding where a judicial officer's decision is subject to appeal, that officer cannot create final policy that would bind a municipality); *Williams v. City of Sherwood*, 947 F.3d 1107 (8th Cir. 2020) (same). Furthermore, the County Judge is clearly not a final policymaker with respect to creating the two Facebook pages. *See generally Thompson v. Shock*, 852 F.3d 786 (8th Cir. 2017). This is a question of state law and Ark. Code Ann. § 14-14-1101 does not remotely suggest that, in discussing the powers of the County Judge, that creating a Facebook page or anything approximating such conduct is within the final policymaking authority of the Judge. Any claim against Judge Harness in his official capacity (Searcy County) should be dismissed.

**E.      Plaintiffs' have no private right of action to seek Judge Harness's removal**.

In the final Count of their First Amended Complaint, the Plaintiffs seek a declaration from the Court to the effect that Searcy County Judge Jim Harness is not a "person of upright character," as that phrase is used in the section of the Arkansas Constitution detailing the qualifications for a County Judge in Arkansas. There is no express or implied private right of action under the Arkansas Constitution for a private citizen to seek removal of Judge Harness. *See Dahl v. ConAgra, Inc.*, 998 F.2d 619, 622 (8th Cir. 1993). Thus, his request for the Court to declare Judge Harness is allegedly not fit for office should be summarily dismissed. Even assuming *arguendo*, a private right of action, the Court should abstain at this juncture as Plaintiff now claims the State has sought Judge Harness's removal. Either way, this claim should be dismissed.

24

## IV.  CONCLUSION

For the reasons stated above, the Defendants respectfully request that this Court grant their Motion to Dismiss and dismiss Plaintiffs' claims *in toto*, and for any and all other relief to which Defendants may be entitled.

Respectfully submitted,

JIMMY DALE HARNESS, in his individual capacity, and in his official capacity as County Judge of Searcy County, Defendant

/s/ Michael A. Mosley
Michael A. Mosley
Ark. Bar 2002099
Jason E. Owens
Ark. Bar. No. 2003003
JASON OWENS LAW FIRM, P.A.
**Mailing Address:** P.O. Box 850
Conway, Arkansas 72033-0850
**Physical Address:** 1023 Main St, Ste 204
Conway, Arkansas 72032
Telephone (501) 764-4334
Telefax (501) 764-9173
email: mosley@jowenslawfirm.com